Chancellor *v.* Gummere.

THE CHANCELLOR, appellant,

*v.*

BARKER GUMMERE, administrator of Frederick Kingman, deceased, respondent.

By the terms of a foreclosure sale the purchaser was required to pay ten per cent. of the purchase-money at the close of the sale, and if he should not complete his purchase, the premises would be offered for sale again, and the defaulting purchaser should not be benefited by any advance in price at such second sale, but liable for all loss and expense occasioned thereby. A purchaser of the premises for $9,900 paid the ten per cent., but did not pay the balance of the purchase-money, and the premises bought by him were resold ·by the sheriff, and brought $10,500.—*Held,* that he was entitled to recover the ten per cent. deposited by him.

On appeal from an order granted by Vice-Chancellor Van·Fleet, whose opinion was as follows:

The petitioner, Isaac B. Parker, asks to have certain moneys·returned to him, which he paid in part performance of a contract for the purchase of a part of the mortgaged premises sold under·

NOTE.—In *Ex parte Hunter,* 6 *Ves.* 94, 97, Lord Eldon said: "If the recent. sale produced more than the original purchase-money, the purchaser who had violated his agreement could not call for an account of the surplus."

In *Thompson* v. *Kelly, 101 Mass. 291,* a house, fitted only with cold water· was advertised, in the newspapers, to be sold at auction, as "fitted with hot and cold water," and subject to examination at any time before the sale, on application to the auctioneer. At the sale the auctioneer read the terms of sale, and announced that there was an error in the advertisements as to the· house being fitted with hot water. It was bought by the defendant, who had read the advertisement, but arrived at the sale after the auctioneer ·had made· his statement. The defendant, without reading them, signed the terms of sale, which contained a copy of the advertisement, with the words "hot and" erased, and with the ordinary clause as to the forfeiture of the purchaser's deposit in case of his default. The defendant, after his purchase, asked for, and. obtained the keys of the house, stating that if it was all right he would pay the deposit ($200) at once. Upon examining the house he found that it was not fitted with hot water, and returned the keys, informing the auctioneer that: he would not take the house, nor pay the $200, whereupon the auctioneer re—

the decree made in the above-stated cause. The facts necessary to be considered in deciding his application, may be stated as follows: A final decree was made in this cause, June 26th, 1876, directing a sale of the mortgaged premises, to raise and pay to the complainant nearly $37,000; the mortgaged premises were sold in two parcels, on the 21st of December, 1876; the petitioner purchased one of the parcels for $9,900; one of the conditions of sale, under which he purchased, required him to pay ten per cent. of the amount of his bid at the close of the sale, and to sign an acknowledgment of his purchase; he complied with this; another of the conditions provided that "any person or persons purchasing at this sale, and not complying with the foregoing articles and conditions, the property so struck off and sold to him or them will be offered for sale a second time, and the first purchaser or purchasers will not be benefited by any advance, but will be held liable for all loss and expense occasioned thereby;" the petitioner did not pay the balance of the purchase-money, and that parcel of the mortgaged premises which he had agreed to purchase was re-advertised, and after nine adjournments was, on the 13th of September, 1877, sold to another purchaser for $10,500, being $600 in excess of the sum the petitioner agreed to pay; this excess was more than sufficient

advertised the house for sale on account of the defendant, and resold it for $30 more than the amount of his bid.—*Held*, that the auctioneer could recover the $200 from the defendant without deduction on account of the $30.

In *Mealey* v. *Page, 41 Md. 172*, an executor sold lands under a testamentary power to a purchaser, who signed an agreement, binding himself to comply with the terms of sale, upon its ratification by the orphans court. The sale was reported to the court, and duly confirmed, but the purchaser made default, whereupon the court, under the statute, ordered the land to be resold at his risk. It was resold, and the amount then bid exceeded that which was bid at the first sale.—*Held*, that the original purchaser was entitled to the excess, after deducting therefrom the costs and expenses incurred by reason of his default. This case was afterwards approved in *Early* v. *Dorsett, 45 Md. 462, 466*.

See, also, *Brundige* v. *Morrison, 56 Md. 407, 414*.

In *Barrell, ex parte, L. R. (10 Ch.) 512*, there was no stipulation as to the forfeiture of the deposit, in case the purchase went off through the purchaser's default. After the title had been accepted, the purchaser became bankrupt, and his trustee disclaimed the contract, under the bankruptcy act, and called

to cover the interest on the purchase-money the petitioner had agreed to pay for the period intervening between the first and second sales, and the costs and expenses of the second sale; the purchaser at the second sale paid his bid; the petitioner, at the time of his purchase, was the owner of the equity of redemption of the mortgaged premises, having purchased them at sheriff's sale under executions issued on judgments recovered at law against the mortgagor, but he was in no way liable or bound for the mortgage debt. The proceeds realized from the sale of the mortgaged premises were not sufficient to satisfy the complainant's decree by $20,000. The ten per cent. paid by the petitioner on his purchase has been brought into court by the sheriff, and the petitioner now asks to have the money returned to him.

The rights of the parties must be determined by their contract. This contract was made with the court, and for that reason should be so construed as to work no oppression or injustice. Lord Macclesfield once said, in a case somewhat similar, that the court ought not to be partial to itself, or carry that farther than it would a contract betwixt party and party. On the other hand, the court might be said to have rather a greater power over a contract made with itself than with any other. *Savile* v. *Savile,* *1 P. Wms. 745.* The important question here, as it is in all cases

upon the vendor to repay the deposit.—*Held,* that the vendor was entitled to retain it. Also, *Kell* v. *Nokes, 14 W. R. 903; Depree* v. *Bedborough, 4 Giff. 479; Forster* v. *Hayman, 26 Pa. St. 266, 268.*

In *Bleeker* v. *Graham, 2 Edw. Ch. 647,* it was held that there could be no forfeiture of a deposit, unless there was an express stipulation to that effect. See *Casson* v. *Roberts, 31 Beav. 613; Thomas* v. *Brown, L. R. (1 Q. B. D.) 714; Hinton* v. *Sparkes, L. R. (3 C. P.) 161.*

In *Tindles' Appeal, 77 Pa. St. 201,* lands were sold under an execution on a mortgage, which was the first lien, and the purchaser paid $850 on his bid, but failing to complete his purchase, the sheriff sold the same premises on another execution on a subsequent judgment, and subject to the mortgage for a sum which, with the amount due on the mortgage and the $850, was no greater than the first bid.—*Held,* that the next lien creditor, not paid by the second sale, and not the first purchaser, was entitled to the $850.

In *Schoening* v. *Leeds, 7 W. N. C. (Pa.) 243,* a defaulting purchaser was held liable, notwithstanding a second sale for a greater price than the amount of his bid, when the second purchaser also made default.—Rep.

involving the interpretation of contracts, is, What did the parties mean? And in this case, as in all others where the contract is in writing, we must go to the writing for the answer. Now, on looking into the contract in this case, the first thing that attracts attention bearing on the question in hand, is that express provision is made for a resale in case the first is not carried out. The vendor reserves a right to rescind by a resale, in case the first purchaser does not perform his contract. Express provision is also made that if damage results from such second sale, the first purchaser shall be liable for it. It thus clearly appears that compensation or indemnity, in case of loss, was before the minds of the parties; they made a provision for it, but they made no express provision upon the subject of forfeiture or penalty. The parcel purchased by the petitioner having been sold at the second sale for a price so much larger than that which the petitioner agreed to give, the ultimate effect of his default was rather to help than to harm the vendor. It is certain there was no loss or damage, and the petitioner is therefore under no duty, by the terms of his contract, to make compensation.

The only other ground, then, on which it can be said, as it seems to me, that the petitioner has lost his right to reclaim the money, is, that by his failure to keep his contract, the money he paid became forfeited. A forfeiture for the non-performance of a condition can only be awarded on plain words or unavoidable implication. Forfeitures are not favored in equity; indeed, they are opposed to its general principles. The opposition is fundamental, for what are they but a compulsory transfer of what belongs to one person to another as a compensation for the other's wrongs, regardless of the proportion which the value of the thing forfeited bears to a pecuniary estimate of the injury sustained? Why, in this case, if the money paid by the petitioner has, by the terms of the contract, become forfeited, the court, I suppose, must so adjudge, though it should appear that the mortgaged premises, at the second sale, were sold for enough to pay the whole amount of the decree. It is certain, as already remarked, that there are no express words in this contract which show that the parties intended, in case the purchaser did not perform, that

the money he paid in part performance should be forfeited. And it seems to me to be equally clear that no such intention can be imputed to them by implication. There is, however, an adjudication which seems to hold that clauses of forfeiture in such contracts are superfluous, and that a contract without such a clause is entitled to the same legal effect, precisely, as a contract containing such a clause. Such, in substance, is the doctrine on which *Battle* v. *Rochester City Bank, 5 Barb. 414,* was decided. The decision in that case was affirmed by the court of appeals, but the decision of the appellate court was put on a ground entirely distinct from that on which the case was decided in the court below. The court of appeals held that, assuming that the contract had been rescinded by mutual consent, and that the plaintiff was, in consequence, in position to ask to have returned to him what he had parted with in part performance of the contract, still he was not entitled to recover, for what he had parted with was land, and not money, and he was before the court asking for money in the place of the land before he had been denied the land. *Battle* v. *Rochester City Bank, 3 N. Y. 88.*

The doctrine on which *Battle* v. *Rochester City Bank* was decided by the supreme court, seems to have originated with Sir Edward Sugden. After commenting on *Palmer* v. *Temple, 9 Ad. & El. 508*—a case which will be more particularly referred to hereafter—in his Treatise on Vendors and Purchasers, he says: "The question will then remain, whether the seller's resale of the estate will give the purchaser a right to rescind. It would seem not, if the sale was after the purchaser's default; for as the purchaser, by his act, has lost the right to enforce the contract, the disposal of the estate by the seller prejudiced no right of the purchaser, and could impart to him no right to rescind a contract which he had already broken. The sale does not purge the previous default of the purchaser. To him it matters not whether the seller receives the profits himself, or lets or sells the estate, for in either case he cannot enforce the contract. The sale, it is argued, prevents the seller from performing the first contract. But the answer to this is, that he cannot be compelled to perform it. How, therefore, does it differ the case that he has sold what he

.might, in spite of the purchaser's claim, retain in his own hands for his own use? He has sold what the purchaser has lost the right to demand. The second sale does not give to the purchaser a right of action for damages, although the subject of the first contract is disposed of. If, therefore, in consequence of the purchaser's default, the seller is at liberty to resell · for his own profit, he does a lawful act from which no damage results to the first purchaser, and which, it should seem, cannot revive in the latter a right to recover the deposit which did not exist before the second sale." *1 Sugd. on Vend. 412.* The vice of this argument is apparent. It assumes that the failure of the purchaser to pay the balance of the purchase-money at the time agreed upon works a forfeiture of all his rights under the contract. In the absence of a clear agreement to that effect, such are not the consequences of a failure to perform at the time fixed. On a valid contract being made, the purchaser in equity becomes the owner of the land; the vendor becomes the trustee of the legal title for the vendee, and the vendee becomes the trustee of the purchase-money for the vendor. The parties may agree either by the contract of purchase, or by one subsequently made, how their mutual rights and obligations in this respect may be terminated, or they may be absolved from the contract by judicial action, but while the contract remains in force, the lands, in equity, are the property of the vendee, and no sale will be effectual against his rights until they reach the hands of a *bona fide* purchaser who actually pays value for them. *Houghwout* v. *Murphy, 7 C. E. Gr. 531.*

And even at law it has been held that, in the absence of a clause of forfeiture, the vendee may, after the vendor has conveyed the subject of the sale to another purchaser, recover the money he has paid on the purchase, though it was his fault that the contract was not performed. In *Palmer* v. *Temple,* the case already mentioned, the facts were· these: the plaintiff agreed to purchase a lease of the defendant, and paid down .£300 of the purchase-money at the time the contract was signed; he failed to pay the residue; the defendant afterwards sold .the. lease to another purchaser, and put him in possession of

the demised premises; the plaintiff then brought an action to recover the amount he had paid on the purchase. The agreement contained a stipulation that if either party should refuse to perform, he should pay the other £1000 as in the nature of liquidated damages. On the trial it was not shown that the defendant had sold the lease to the second purchaser for less than the plaintiff had agreed to pay. It was decided that the action was well brought. Lord Denman, in delivering the opinion of the court, said: " The ground upon which we rest this opinion is, that in the absence of any specific provision, the question whether the deposit is forfeited depends on the intent of the parties, to be collected from the whole instrument; but as this imposes on either party that should make default a penalty of £1000, the intent of the parties is clear that there should be no other remedy." He also said that the vendor might sue for the penalty, and recover such damages as a jury thought proper to award, but he could not retain the deposit, for that must be considered not as earnest to be forfeited, but as part payment. And then he adds: " But the very idea of payment falls to the ground when both have treated the bargain as at an end; and from that moment the vendor holds the money advanced, to the use of the purchaser." This, as it seems to me, must unquestionably be so under a contract which expressly reserves to the vendor the right, in case the vendee makes default, to rescind by reselling, and by which the parties stipulate that in case loss results to the vendor from the second sale, the vendee shall make it good. Such a provision for indemnity excludes the idea of forfeiture, or that the vendor shall have anything more than compensation.

The principle established by *Palmer* v. *Temple* has been followed in this state. In *Hoagland* ads. *Hall, 9 Vr. 350*, the plaintiff sued on a check given to him by the defendant in part payment of the sum he had agreed to pay the plaintiff for certain chattels and the assignment of a lease; the defendant failed to pay the balance at the time agreed upon, and the plaintiff, after assigning the lease and making sale of the chattels to other persons, brought suit on the check. The court, in passing upon his right to recover, first affirmed the correctness of the principle

laid down in *Palmer* v. *Temple,* and then added: "The right to payment of money arising from a sale can exist only when the title to the property sold has been or can be passed to the vendee; and after the vendee has refused to execute any part of the bargain, the vendor's whole claim to pay consists in his still being willing that such title shall pass." It was held that the plaintiff was not entitled to recover. The important principle established by the decision is this: that where a vendee refuses to fulfill his contract, and the vendor subsequently parts with the subject of the sale, and thus puts it out of his power to perform his contract, the only remedy left him, in such a condition of affairs, is an action against the vendee for the loss of the bargain.

Even where the contract provides that if the vendee makes default he shall forfeit his deposit, and also be liable for any damages resulting from a resale, it has been held that if, on a resale, damages accrue, the vendee is entitled to have .the amount of his deposit recouped against the damages, and the vendor is only entitled to recover the excess of the damages. *Ockenden* v. *Henly, El., Bl. & El. 485.*

On the argument, my attention was called to an unreported case decided by this court at the May Term, 1873. The name of the case is *Scheider* v. *Ramsey.* The mortgage on which the suit in that case was founded was made by Catharine Ramsey to the complainant, to secure a debt due from John Ramsey to the complainant. The suit was undefended, and a final decree was made in due course. At the first sale John Ramsey, became the purchaser of the mortgaged premises. He was the real debtor. He purchased under conditions requiring him to pay ten per cent. of the amount of his bid, and they also provided that in case he did not complete his purchase the property should be resold, and if, at the resale, it was sold for less than his bid, with interest and costs added, he should be liable for the deficiency; and by a further provision of the conditions, the sheriff was directed to apply the ten per cent. paid by him to the payment of such deficiency. Ramsey paid the ten per cent., but did not complete his purchase. The mortgaged premises were again sold, and at such resale were bid off by another person for a sum

$600 in excess of Ramsey's bid.   The second purchaser paid the ten per cent., but did not pay the balance of his bid.   A third sale was then made, and the price obtained at this sale was over $4000 less than at either of the previous sales.   The last sale was completed.   After applying the money raised by the last sale, a large balance still remained due to the complainant on his decree.   The court directed the sheriff to bring both deposits into court, and they were, by order of the court, paid to the complainant.   This disposition of the money was, unquestionably, as against both purchasers, both legal and just.   Though the mortgaged premises were bid up, at the second sale, to a sum more than sufficient to relieve the first purchaser, the sale proved abortive and nothing was realized.   In fact, no effectual sale was made.   Besides, the purchaser at the first sale was the real debtor—the property of his surety had been sold to pay his debt—and the court having, through its officer, obtained possession of his money, was bound, on the plainest principles of justice, to apply it to the payment of his debt.   Both his surety and his creditor had a right to have it so used.

The rights of the complainant against the purchaser at the second sale were even more obvious.   The deficiency between the price realized at the third sale and that at which he purchased, having greatly exceeded the sum paid by him on his purchase, and the directions of the conditions under which he purchased being that the sum so paid by him should, in case of a deficiency, be applied in payment of such deficiency, the court could do nothing but apply the money paid by him according to the plain direction of his contract.   From this brief statement it will be perceived that the two cases are so radically dissimilar in all their essential characteristics, that it is impossible to decide the one now under consideration by the legal rules which controlled the decision of the other.

The petitioner is, in my judgment, entitled to the order he asks.

*Mr. S. M. Dickinson* and *Mr. G. Collins,* for appellant.

In this case there was a foreclosure sale of land owned by

Pedrick *v.* Pedrick.

Isaac B. Parker.   He was himself (by an agent) the purchaser
of one parcel for $9,900, on which he paid ten per cent., or $990,
December 21st, 1876, and agreed to pay the residue, and receive
deed December 30th.   He did not pay the rest of the price, and
the property was resold September 18th, 1877, and bought in by
the complainant for $10,500, leaving a large deficiency on the
decree.   The defaulting purchaser applied to have refunded his
payment of $990.   The vice-chancellor advised an order refund-
ing the payment, and from that order this appeal is brought.
Parker assigned his claim to Frederick Kingman, since deceased,
whose administrator, therefore, is the party to the record. *Ketchum*
v. *Evertson, 13 Johns. 359; Green* v. *Green, 9 Cow. 46, 51;
Haynes* v. *Hart, 42 Barb. 58; Battle* v. *Rochester City Bank, 3
N. Y. 91; Haven* v. *Patterson, 43 N. Y. 218; Page* v. *McDon-
nell, 55 N. Y. 299; Seymour* v. *Bennett, 14 Mass. 266; Rounds*
v. *Baxter, 4 Greenl. 454; Morton* v. *Chandler, 6 Greenl. 142;
Smith* v. *Haynes, 9 Greenl. 128; Woodward* v. *Boston, 115
Mass. 81; Hansbrough* v. *Peck, 5 Wall. 497; Wheeler* v.
*Mather, 56 Ill. 241.*

*Mr. L. T. Hannum,* for respondent.

Per Curiam.

Decree unanimously affirmed for the reasons given by the
vice-chancellor.

---

Somers Pedrick, appellant,

*v.*

Sarah J. Pedrick,. respondent

On appeal from a decree dismissing the appellant's petition for
a divorce on the ground of adultery, advised by Vice-Chancellor
Bird.

*Mr. J. J. Crandall,* for appellant.